UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      Cr. No. 16-3306-02  MV

JOSUE DUARTE,

    Defendant.

## MEMORANDUM OPINION

On March 16, 2017, defendant Josue Duarte entered into a plea agreement with the government, pursuant to which he pleaded guilty to an Information charging him with unlawfully, knowingly and intentionally possessing with intent to distribute a controlled substance, a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c).  [Doc. 44].  On August 31, 2017, Mr. Duarte appeared before the Court for sentencing in this case.  At the conclusion of the hearing, the Court sentenced Mr. Duarte to 24 months imprisonment and three years of supervised release. [Doc. 72]. The Court's reasoning and basis for the sentence is set forth in this Memorandum Opinion and Order.

The offense level in this case is 25 and the criminal history category is IV.  The guideline imprisonment range is 84 months to 105 months.  Mr. Duarte requested a downward variance to a sentence of 36 months. The government opposed Mr. Duarte's request for a downward variance and advocated a sentence within the guideline range.

In addition to the Sentencing Guidelines, the Court was required to consider the other factors set forth in 18 U.S.C. § 3553, including the nature and circumstances of the offense and

the history and characteristics of Mr. Duarte.  Section 3553 also required the Court to impose a sentence that complies with the purposes of sentencing, which include (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation.  In satisfying these purposes, the Court was obligated to consider—and did consider—each of the factors outlined in Section 3553(a).

## I. The Offense

On July 15, 2016, agents from the Bureau of Alcohol, Tobacco and Firearms spoke with a confidential information about an unidentified individual, "JJ," who allegedly had multiple sources of supply for methamphetamine and heroin and was willing to introduce the confidential informant to them.  JJ was later identified as Johnny Flores, the codefendant in this case. The same day, the confidential informant and an undercover agent met with Mr. Flores in a McDonald's parking lot in Albuquerque.  Mr. Flores offered to sell the undercover agent two ounces of methamphetamine for $1,300.  He did not actually have the methamphetamine, but contacted his source of supply for it.  The source of supply failed to arrive, stating that he was at work.  There was no exchange of drugs at this encounter.

On July 17, 2016, the undercover agent contacted the source of supply, an unknown Hispanic male, at a phone number provided to him by Mr. Flores.  The source of supply, Mr. Flores and the undercover agent met at a parking lot, where the undercover agent purchased two ounces of methamphetamine for $1,200.  Mr. Flores handled the transaction while the source of supply stayed in the car.  Mr. Flores indicated the source of supply did not want to speak to the undercover agent at that time.  The undercover agent gave Mr. Flores $40 as a broker's fee.  The source of supply was later identified as the Defendant, Mr. Duarte.  The methamphetamine had a net weight of 57.9 grams.

On July 18, 2016, the undercover agent contacted Mr. Duarte and requested two ounces

of methamphetamine. Upon arrival, Mr. Duarte was driving. Mr. Flores conducted the transaction, giving the undercover agent two ounces of methamphetamine for $1,200. The methamphetamine had a net weight of 55 grams.

On July 21, 2016, Mr. Flores introduced the undercover agent to Mr. Duarte. The net methamphetamine sale on that day was 54.91 grams. Subsequently, Mr. Duarte began conducting the sale of methamphetamine directly to the undercover agent, without Mr. Flores. Mr. Duarte conducted the following drug transactions:

   July 26, 2016—net amphetamine sale of 104.405 grams

   July 29, 2016—net amphetamine sale of 108.3 grams

   August 2, 2016—net amphetamine sale of 106.875 grams

   August 5, 2016—net amphetamine sale of 42.75 grams.

During Mr. Duarte's interactions with the undercover agent, Mr. Duarte told him his source of supply was out of town, but he wanted to introduce the undercover agent to him; that he pays his source $550 an ounce and makes $25 off each ounce sold; that he wanted to place the undercover agent in contact with his source so he (Mr. Duarte) could be removed from the mix. This meeting did not occur before Mr. Duarte's arrest.

On August 10, 2016, ATF agents arrested Mr. Duarte at his residence. On August 11, 2016, they arrested Mr. Flores outside a gas station located in Albuquerque.

Mr. Duarte was responsible for the sale of 527.24 grams of methamphetamine and Mr. Flores was responsible for the sale of 164.91 grams of methamphetamine. Mr. Flores conducted three transactions with the undercover agent, using Mr. Duarte as his source of supply.

## II. Section 3553(a) Factors

## A. History and Characteristics of Mr. Duarte

Mr. Duarte was born in Los Angeles, to Cesar Duarte, age 55, and Delia Duarte. His mother died of ovarian cancer in 2009. He cared for her during her illness. Mr. Duarte's father is a citizen of Guatemala. He currently resides there and owns a supermarket. Mr. Duarte reports that he gets along well with his father, although he hasn't spoken to him in about two years. Mr. Duarte has a sister, Caroline Duarte, age 33, who is a bank manager in Los Angeles, and a brother, Anthony Duarte, age 31, who lives in Las Cruces and is employed by Direct TV. He stays in touch with his siblings, and they are aware of his custodial status.

Mr. Duarte described his childhood as "okay" and "normal," and said that he always had the basic necessities growing up. He denied any abuse, but admitted that punishment for misbehaving was "rough," and that his father used a belt on him for disciplinary purposes.

Mr. Duarte attended Alexander Hamilton High School in West Los Angeles and John F. Kennedy High School in San Fernando Valley, graduating in 2003. While serving a custodial term at the Guadalupe County Correctional Facility in Santa Rosa, New Mexico, he took classes and obtained a GED because the correctional facility was unable to confirm that he obtained his high school degree. Mr. Duarte also attended Central New Mexico Community College from 2013 to 2015, focusing on Solar Panel Engineering. However, due to his drug addiction, he stopped going to school.

Mr. Duarte lived in Los Angeles until 2007, when he relocated to Santa Fe with his then-girlfriend. He reported that the relationship dissolved, and in 2013, he moved to Albuquerque. He was renting a room from a friend at the time of his arrest.

Mr. Duarte has been in a long distance relationship with Laura Carlos since 2015. They

have one son.  Ms. Carlos is employed as a nursing assistant.

From 2015 until his arrest in this matter, Mr. Duarte was employed off and on at Right Path Construction in Albuquerque, doing masonry and concrete work.  He has also worked in the past as a cement finisher, a machine operator, a cashier and a security guard.  He has no assets and is in arrears on paying child support.

Mr. Duarte was previously in a relationship with Amber Gray, age 36.  They have two children.  After Ms. Gray's arrest and incarceration on drug charges, the children were placed in the custody of her sister, Ashley Gray.  Before his arrest for this offense, Mr. Duarte lived in close proximity to the aunt, and saw the children regularly.  He reported the children were in good health and adjusting very well to living with their aunt.  After his arrest, he had regular communication with them.

At the sentencing hearing, however, the Court learned that after the Presentence Investigation Report was completed, and at some point before sentencing, Ashley became unable to care for the children, and surrendered them to the State of New Mexico for placement in foster care.  In the month before sentencing, Mr. Duarte and his attorney attempted without success to contact Ashley.  They believe the children are now in foster care, but have been unable to determine the identity or location of the foster parent or parents.  Mr. Duarte has a friend, Alex Gonzalez, who he wants to take custody of the children, but the friend has not yet been approved by the state.  This change of circumstances, in the Court's opinion, is a critical factor in the Court's consideration of the appropriate sentence for Mr. Duarte, as his children are no longer living with and being cared for by a family member.

Mr. Duarte reports that he is in good physical and mental health.  However, he has a history of serious drug abuse.  He began using methamphetamine in tenth grade and smoked

about two grams a day until his arrest for the instant offense. He also began smoking marijuana in high school and used it regularly until his arrest. Additionally, Mr. Duarte admitted to experimenting with heroin, cocaine and crack cocaine, typically using them when he was partying. He has never participated in drug treatment, but believes it would be beneficial.

### B. Other § 3553(a) Factors

With respect to the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, the offense was serious. In selling methamphetamine, Mr. Duarte contributed to New Mexico's rampant drug abuse problem. The Court notes, though, that Mr. Duarte admitted and accepted responsibility for his actions, pleading guilty to the charge against him in this court.

With respect to deterrence, Mr. Duarte has a history of criminal convictions for Driving While Intoxicated, Burglary, Receiving or Transferring a Stolen Motor Vehicle and Shoplifting. However, before the instant offense, he had not been convicted of any crime since 2010, and his longest term of custody has been approximately two years. Mr. Duarte has also been arrested 12 times for domestic violence incidents involving his ex-girlfriend, Amber Gray. All but one of the domestic charges have been dismissed.

Additionally, despite his serious drug addiction, prior to the events giving rise to these charges, Mr. Duarte had never been involved in drug trafficking. The Court agrees with defense counsel's assertion that in this case, law enforcement targeted Mr. Duarte because he is a drug addict, and they believed that—acting through a paid confidential informant who was himself an addict—they could easily persuade him to procure and sell large quantities of illegal substances, thereby exposing him to a lengthy prison sentence. The Court finds it disturbing that tax dollars are being used to pay other criminals to dangle drugs in front of addicts and get them to engage

in these activities—especially when, in New Mexico, there are already plenty of willing traffickers committing these offenses with no government encouragement.

With respect to providing the defendant with needed treatment, Mr. Duarte has a very serious drug addiction problem. Although counsel for Mr. Duarte requested a 36-month sentence, he admitted during the sentencing hearing that the Bureau of Prisons 500 Hour Program could not realistically be completed in that period of time. The Court concurred with this conclusion. Nevertheless, the Court expressed its view that Mr. Duarte desperately needs intensive and ongoing treatment and counseling so that he can provide and care for his children.

### III. Conclusion

Having considered the factors set forth in 18 U.S.C. § 3553(a), the Court found that a downward variance from the Sentencing Guidelines was warranted in this case. As the Court previously stated, Mr. Duarte's offense was quite grave, and the Court does not make light of it. However, based on his drug addiction problem, his lack of any prior involvement in drug dealing, the manner in which law enforcement pursued the case and—most importantly—the fact that his children are now in foster care, the Court concluded that it is imperative for him to serve his sentence, receive treatment for his drug addiction, and return to his children as soon as possible.

Accordingly, the Court committed Mr. Duarte to the custody of the Bureau of Prisons for 24 months, followed by supervised release for a period of three years. As set forth by the Court during the sentencing hearing, it further ordered that during supervised release, he will participate in an inpatient substance abuse treatment program, followed by an outpatient substance abuse treatment program, and comply with all other terms and conditions set forth during the sentencing hearing and memorialized in the Judgment. [Doc. 69, 72].

ENTERED THIS 25th day of January, 2018.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE


John Van Butcher                             Paul H. Spiers
Federal Public Defender's Office             Assistant United States Attorney

*Attorney for Mr. Duarte*                    *Attorney for the United States*